CHARLES PECKAT MFG. CO. et al. v. JACOBS.

No. 9846.

United States Court of Appeals Seventh Circuit.

Dec. 12, 1949.

Writ of Certiorari Denied March 13, 1950.

Bernard A. Schroeder, Jules L. Brady, Chicago, Illinois; Bradford Wiles, Chicago, Ill. (Schroeder, Merriam, Hofgren & Brady, Chicago, Ill., of counsel), for appellants.

I. Irving Silverman, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

This suit was instituted by Emma Peckat, owner of the patent in suit and widow of the patentee, Charles Peckat, and Charles Peckat Manufacturing Company, exclusive licensee, for infringement of Patent 2,180,909, issued November 21, 1939, relating to outside sun visors for automobile windshields. The device charged with infringing is manufactured by R. S. B. Manufacturing Company, Inc., and sold by defendant Jacobs. The R. S. B. Company has assumed and is financing the defense.

On October 2, 1946, Rose and Siegal, representatives of R. S. B., entered into a license agreement with the plaintiff manufacturing company, paying in advance the agreed minimum royalty for three months. When no further royalties were remitted, plaintiffs, upon inquiry, were advised that R. S. B., had had a fire loss and would appreciate aid in getting started again. Thereupon, plaintiffs excused payment of royalties for one month. As time passed and no further royalties were forthcoming, plaintiffs cancelled the license, April 17, 1947. However, R. S. B., continued manufacturing the device and selling it in Chicago through Jacobs.

The trial court adopted submitted findings and conclusions that the claims in suit were void but that defendant's device would infringe if the claims were valid. On this appeal, we are not concerned with any question of infringement, for defendant admits that he is manufacturing the patented device. Our sole question is as to validity.

Sun visors upon automobiles are old. In the earlier years of the automobile, cars were largely of the open touring type, with upright standards supporting the tops. Certain visors, attached to the upright posts or to auxiliary members attached to and parallel with such posts, were prevalent in those days. Closed cars grew in number, as they came to be less expensive, and their fronts, that is, the windshields, eventually came to be streamlined or slanting.

With the coming of the closed cars, sun visors which had been used on touring cars practically disappeared, largely because of the difficulty encountered in attaching them without drilling holes in the body and in fitting them to automobiles which had become more and more streamlined. Peckat, an engineer and automobile dealer, became interested in the problem of supplying visors which could be attached without holes in the body of the car or without welding or riveting. His experiments eventually resulted in a flanged bracket, which is tapered down outwardly and has a concealed wedge-shape member which effects a lost motion connection with the flange bracket and, when wedged into its proper position, clamps the device firmly on the gutter of the automobile without perforating the body or welding the attachment to it. He found that the tiny gutters at the edge of the windshield frame were sufficiently rigid and strong to withstand the strain of holding a visor firmly at high speed; that the clamp he devised to adhere to the gutter would not work loose when subjected to the vibration of a moving car; that there was sufficient room to attach a clamping device to grip the opposite upper and lower faces of the gutter so that the gripping parts could be wedged directly against the strongest part of the gutter and thus avoid perforating the gutter or having exposed metal which might cause rusty streaks on the car. In his patent he specified in detail a bracket which successfully solved the problems and resulted in an effective useful practical visor and attachment.

The court found that his patent was anticipated by prior patents and prior uses and, in the alternative, that if the patent is not directly anticipated, it required only the knowledge of a skilled mechanic to conceive the structure described. It found also that the claims in suit are too broad, in that they do not describe the structure with the particularity required by the statute and claim more than the patent shows is novel, if there is novelty; that Claim 7 is invalid in that it is functional in character and describes an inoperative device; that the commissioner of patents did not comply with the statute, and that the examiner in charge did not properly examine the application. Upon appeal plaintiffs urge that there is no evidence to support the finding of invalidity and that the conclusions of law are erroneous.

In its brief, defendant says Peckat "may have invented something." He suggests that there may have been novelty in Peckat's idea of constructing a bracket with a wedging member slidably mounted on the interior of a body having a flanged guide along the top for one edge of the wedge to engage there against, and having a flanged lower edge to clamp under the

gutter with the opposite side of the flange engaged in the crook of the gutter so that, when it is desired to tighten the device to the gutter, the wedge is driven into wedging engagement with the gutter, and in providing the brackets so that each could separately and independently be secured to the gutters on opposite sides of the windshield. Though expressing doubt that this comprises invention, he assumes, for the sake of argument, that novelty rests in the structure but that the claims are insufficient.

After careful analysis of the evidence of the prior art, we are convinced that the assumption of the defendant, for the purpose of argument, is a correct assumption as a matter of fact and that Peckat achieved invention. Defendant asserts, however, that the claims are so broad as to cover the prior art and, therefore, cannot be valid as claims for a secondary invention, as distinguished from the prior art.

■ Claims 1, 2, 6 and 7 are in suit.* They are preceded by explicit description of and specifications for the device and each refers to this specific description and incorporates it. Thereby we think the claims are limited to the specific device described, even though their language, without reference to the specifications, might import a wider field. Thus, in Jones v. Evans, 7 Cir., 215 F. 586, 589, this court said: "The claim in suit does not name all the various means shown in the specifications and drawings for connection of the means or elements named therein to make them operative in the combination; but we believe the claim is nevertheless sufficient for enforcement, on reference to the specifications. It is to be interpreted to include such connections and relations of the several means of the combination which are named, as implied therewith to make them operative, in conformity with the specifications." We added: "We held in case No. 1995, Horton Mfg. Co. v. White Lilly Mfg. Co., 7 Cir., 213 F. 471, * * * that while claims do not in terms call for certain features of the invention—'those features may, for the purpose of restricting the claim so that it shall meet the requirements of the inventive idea, be gathered from the specification'—citing Klein v. Russell, 19 Wall. 433-466, 22 L.Ed. 116; Burke v. Partridge, 58 N.H. [349], 351; Jones v. Barker, C.C., 11 F. [597], 600; Walker on Patents, § 185."

In Standard Oil Co. v. Globe Oil & Refining Co., 7 Cir., 82 F.2d 488, at page 496, this court said: "It is required by Rev.St. § 4888, 35 U.S.C.A. § 33, that the application shall contain 'a written description of the device, and of the manner and process of making, constructing, compounding, and using it in such full, clear, concise, and exact terms as to enable any person, skilled in the art or science to which it appertains or with which it is most nearly connected, to make, con-

---

* Claim 1: Apparatus of the character described for supporting an awning in the desired position with respect to the windshield of an automobile having gutters adjacent said windshield, including: a pair of members adapted to be clamped to the gutters on each side of the windshield; and means carried by the members for supporting the awning in said position.

Claim 2: Apparatus of the character described for supporting an awning in the desired position with respect to the windshield of an automobile having gutters adjacent said windshield, including: a pair of members adapted to be clamped to the gutters on each side of the windshield and to make supporting engagement with the back end of the awning; and means for adjustably sup-

porting the front end of the awning.

Claim 6: A member of the character described adapted to provide support for the front and back ends of an awning to maintain it in a desired position with respect to the windshield of an automobile having gutters adjacent said windshield, including: a body portion; and edge portion adapted to conform to one side of a portion of one of said gutters; and means mounted on the body portion adapted to engage the other side of the gutter to grip it between the edge portion and the last mentioned means.

Claim 7: Apparatus of the character claimed in claim wherein the last mentioned means in so constructed and arranged as to be driven into wedging engagement with the gutter.

struct, compound, and use the same.' The object of this is to apprise the public of what the patentee claims as his own, the courts of what they are called upon to construe, and competing manufacturers and dealers of exactly what they are bound to avoid. Grant v. Raymond, 6 Pet. 218, 247, 8 L.Ed. 376. If the description be so vague and uncertain that no one can tell, except by independent experiments, how to construct the patented device, the patent is void." We added: "In the interpretation of the limits of patent claims it is proper to consider the specifications, for at times vague and general language in the claims may be interpreted and sufficiently limited by the specification, but vague and general language in the specification is limited by the claims. The limitations, however, must always be fixed somewhere within the degree of definiteness hereinbefore mentioned."

In Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, at page 510, 37 S.Ct. 416, at page 418, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959, the court said: "The scope of every patent is limited to the invention described in the claims contained in it, read in the light of the specification. These so mark where the progress claimed by the patent begins and where it ends that they have been aptly likened to the description in a deed, which sets the bounds to the grant which it contains."

In Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, at page 558, 18 S.Ct. 707, at page 717, 42 L.Ed. 1136, the court said: "* * * the claim is for a triple-valve device, etc., for admitting air from the main air pipe to the brake cylinder, 'substantially as set forth.' These words have been uniformly held by us to import into the claim the particulars of the specification, or, as was said in Seymour v. Osborne, 11 Wall. 516, 547, 78 U.S. 516, 547 (20 L.Ed. 33, 40): 'Where the claim immediately follows the description of the invention, it may be construed in connection with the explanations contained in the specifications; and, where it contains words referring back to the specifications, it cannot be properly construed in any other way.' In that case it was held that a claim which might otherwise be bad, as covering a function or result, when containing the words 'substantially as described,' should be construed in connection with the specification, and, when so construed, was held to be valid. To the same effect is The Corn-Planter Patent (Brown v. Guild), 23 Wall. 181, 218, 90 U.S. 181, 218, (23 L.Ed. 161, 168)."

In Seymour v. Osborne, 11 Wall. 516, at page 547, 78 U.S. 516, at page 547, 20 L.Ed. 33, the court said: "Omit the words 'substantially as described,' or 'substantially as set forth,' and the question presented would be a very different one, * * * Where the claim immediately follows the description of the invention it may be construed in connection with the explanations contained in the specifications, and where it contains words referring back to the specifications, it cannot properly be construed in any other way."

In Simonds Rolling-Machine Co. v. Hathorn Mfg. Co. et al., C.C., 90 F. 201, at page 206 the court said: "The words 'herein described' are more positive in their effect than the ordinary expression 'substantially as described,' or 'substantially as set forth'; and even this expression in many cases is held to limit a claim, and also sometimes to save it. Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, 558, 18 S.Ct. 707 [42 L.Ed. 1136]. * * * the words 'herein described,' in connection with the careful details of the specification, are ample for all the practical purposes of the patent law."

This court, in Duncan et al. v. Stockham, 7 Cir., 204 F. 781, at page 789 said: "The claim in suit does not name all the various means shown in the specifications and drawings for connection of the means or elements named therein to make them operative in the combination; but we believe the claim is, nevertheless, sufficient for enforcement, on reference to the specifications. It is to be interpreted to include such connections and relations of the several means of the combination which are named, as implied therewith to make them operative, in conformity with the

specifications. Consolidated Roller-Mill Co. v. Walker, 138 U.S. 124, 133, 11 S.Ct. 292, 34 L.Ed. 920; Westinghouse v. Boyden-Power Brake Co., 170 U.S. 537, 558, 18 S.Ct. 707, 42 L.Ed. 1136; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 432, 22 S.Ct. 698, 46 L.Ed. 968; American Fibre-Chamois Co. v. Buckskin-Fibre Co., 6 Cir., 72 F. 508, 515, 18 C.C.A. 662; Thomson-Houston Elec. Co. v. Black River Trac. Co., 2 Cir., 135 F. 759, 765, 68 C.C.A. 461."

Considering these precedents we think it may be safely said that the specifications and description supply at least two functions; first, they serve to explain and define a claim wherein they are incorporated by reference and, second, they frequently limit the invention of the claim to the device described. They do not serve to change the claim of invention or to make it different from what it actually is; but they do function, as we have said, to explain, if explanation is necessary, what is claimed and to limit it, so that the patentee will not be permitted to claim more than he has actually conceived. So here, where the claims expressly limit the claimed invention to the device specified and described explicitly, with definite limitations, we find nothing to invalidate the claims because their language, if not so limited, would cover too broad a field.

Defendant seems to urge that any claim containing the word "means" is invalid because of Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3. It should be observed, however, that in that case, the mode of operation of the accused machine was quite different from that described in the patent and, further, that the Supreme Court distinguished the case from Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 750, 52 L.Ed. 1122, wherein proper claims incorporating a "means" clause were sustained and the claim, in addition to other elements, called for "operating means for the forming plate adapted to cause the said plate to oscillate about its rear edge upon the surface of the cylinder during the rotary movement of said cylinder, the whole operating for the purpose of opening and forming the bottom of the bag tube."

We had occasion to discuss each of these two decisions in Minnesota Mining and Mfg. Co. v. International Plastic Corporation, 7 Cir., 159 F.2d 554, 558, saying: "In distinguishing the claim of the Walker patent from the claim of the Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122, the Court in the Walker case said: 'In that case, however, the claims structurally described the physical and operating relationship of all the crucial parts of the novel combination.' The Court in the Walker case held that the invention in the Paper Bag case was adequately described. We are convinced that the claims here in issue cannot be said to consist with the claims of the Walker patent but they are in every respect similar to the claims in the Paper Bag case. See also O'Reilly v. Morse, [15 How. 62, claim 8, at page 112], 56 U.S. 62, claim 8, at page 112, 14 L.Ed. 601. It is urged by appellant that some of the claims are functional. If so, such language is in words of limitation which express the relationship of the structural elements only, and for this reason such claims are not to be considered as functional." And, in Linde Air Products Co. v. Graver Tank & Mfg. Co., 7 Cir., 167 F.2d 531, 536, we said: "Furthermore, these claims now under consideration seem to be sufficiently definite when construed in the light of the specification. The statute merely states that the claims should particularly point out and distinctly claim the part, improvement, or combination which the applicant claims is his invention or discovery. 35 U.S.C.A. § 33. It would seem that this statute only requires that the claims point out the invention, not that they redescribe it."

Patentee's device is unique in that it has a double clamping effect,—first, it grips the gutter, then, to tighten and hold fast the clamp to the gutter, is the crucial element,—a wedge inserted in the part which grips the gutter and which has a wedge-

shaped receiving part to receive the clamping wedge. The latter is then forced into a tightfitting position and there fixed in place by screws in the device provided for that purpose, which reinforce the tightness of the wedge. Thereby the clamp gripping the gutter rim is held tightly and firmly because of the efficient wedging. This was a completely new concept of efficiently firmly mounting visors on the windshields of automobiles, without perforating any part of the body with holes for screws or welding or riveting plates to the body. The prior art discloses no such conception; it discloses friction clamps about the upright post of the old open top car, but they were tightened merely by screws likely to loosen with vibration. It discloses, also similar friction clamps, likewise tightened by screws, grasping a supplied auxiliary member, parallel to the post of the windshield and affixed thereto; but no prior art included the wedging suggested by the patentee, which eliminated all such parallel parts necessary in the latter named prior art devices.

The same thing is true of the prior art covering luggage carriers and signs placed on top of cars, supported by the gutter running along the edge of the top. In Ellis 175,259 said by defendant to be typical, the sign holder has a flange which stands in and is supported by the gutter, held in position by clips, tightened by a bolt and wing nut. It seems obvious that the vibration of a car would prevent such attachments from supplying any appreciable degree of utility; and none of them included the essential idea taught by Peckat.

Scott 2,207,227, employs two anchor hooks or claws attached to the top of the door openings in the car and to the visor; they are "of such length that when the provided pivot bolts are tightened, the hooked ends of the two oppositely positioned brackets are pulled towards each other and thus clamped tightly." The device does not teach at all what Peckat teaches,—clamping onto the gutter without holes, welding or riveting and tightening and making firm the clamp by the essential wedging element.

We have examined other prior patents cited by defendant. The ones mentioned are typical, and our examination convinces us that the additional citations add nothing in the way of art prior to Peckat.

In addition, defendant relies upon the testimony of Scott, by way of deposition, as proof of prior use. Scott is a competitor of both plaintiff and defendant. His memory was admittedly faulty; he was not corroborated by any contemporaneous records or documents, and, all in all, after considering his testimony with care, we think it clear that it does not measure up to the standard set by this court in Cline Electric Mfg. Co. v. Kohler, 7 Cir., 27 F.2d 638, 641, where we said: "It is quite elementary that, to strike down a patent upon the ground that the patented article was in public use more than two years before the application was filed, this fact must be established by evidence so clear as to satisfy beyond reasonable doubt; and the evidence must so satisfy, not alone as to the time, but also that the use was of the very thing which was patented. James Heddon's Sons, Inc., v. South Bend Bait Co. 7 Cir., 14 F.2d 805."

■ Irrespective of the questioned sufficiency of Scott's testimony to establish prior use, it is clear that what he did in no wise taught what Peckat accomplished; that his conception was entirely different from Peckat's, and that he did not anticipate. In this we are supported by his own testimony that it was clear to him that, because of the way "he attached his device to the car by crow's feet, he did not infringe Peckat in any way." "That which infringes, if later, would anticipate, if earlier." Knapp v. Morss, 150 U.S. 221, 14 S.Ct. 81, 84, 37 L.Ed. 1059. An apt corollary is that if a device does not infringe, if earlier, it would not anticipate.

All in all, we think it beyond question that Peckat achieved invention. The earlier art disclosed various devices for attachment of windshields but none of them ever suggested anything like the idea of a clamp efficiently tightened by a wedge to the gutter, resulting in a taut,

firm connection without the drilling of holes, without the use of screws, which might be loosened by vibration, and without any of the weakness or defects of the prior art.

■ That Peckat's device now seems comparatively simple, of course, is no criterion of his invention. "The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to anyone familiar with the subject; but the decisive answer is that with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to anyone before. The practiced eye of an ordinary mechanic may be sufficiently trusted to see what ought to be apparent to everyone." Potts v. Creager, 155 U.S. 597, 608, 15 S.Ct. 194, 39 L.Ed. 275. See also DuBois v. Kirk, 158 U.S. 58, 63, 15 S.Ct. 729, 39 L.Ed. 895; Expanded Metal Company v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034; Barbed Wire Patents Case, (Moran v. Sturges), 154 U.S. 256, 275, 14 S.Ct. 1019, 38 L.Ed. 981; Goodyear et al. v. Ray-O-Vac Company, 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721.

■ The patent was allowed promptly, endowed, of course, with the presumption of validity. As Mr. Justice Cardozo remarked in Radio Corporation of America v. Radio Laboratories, 293 U.S. 1, 7, 55 S.Ct. 928, 931, 79 L.Ed. 163: "A patent regularly issued * * * is presumed to be valid until the presumption has been overcome by convincing evidence of error." The device met with immediate and pronounced commercial success. The defendant imitated that which he had originally acquired a license to make and ceased to pay the royalties he had agreed to pay. Such imitation in itself is evidence of what the defendant thought of the value to be placed upon the patent. Thus, in Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910, 914: "To the presumption of validity attaching to the grant of the patent by the Patent Office, there is the additional presumption arising from the fact that the invention filled a want arising from a new situation, that it entered into immediate use, and that it met with pronounced commercial success. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Pangborn Corporation v. W. W. Sly Mfg. Co., 4 Cir., 284 F. 217. And in addition to this is the presumption arising from the imitation of the patented article by the manufacturer of the alleged infringing device. As to this, we agree with what was said by Judge Hough, speaking for the Circuit Court of Appeals of the Second Circuit in Kurtz v. Belle Hat Lining Co., 280 F. 277, 281: 'The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think.'" So, here, the act of defendant in making an exact copy of the device patented by the plaintiff, his refusal to pay royalties although he had agreed so to do, must be regarded as well as conclusive evidence of what he thought of the patent and "persuasive of what the rest of the world ought to think." Such a step forward by Peckat in an old crowded field, where not the slightest suggestion had appeared over the years of what he conceived,—clamping without perforating the body and wedging the attachment firmly,—we think was more than mere mechanical skill.

Concerning the shades of differences between mere mechanical skill and invention, we said, in Jones v. Evans, 7 Cir., 215 F. 586, 590: "It is not an easy matter to determine just where the domains of mechanical skill and inventive thought have erected their boundaries. It, however, has been the policy of the law, in order to secure advances in the liberal arts, to extend to the domain of invention the benefit of any doubt with respect to the question of the absence or presence of invention. In the present case the advantages obtained by the device of the claims in suit, as above construed, the

desirableness of which seems to have appealed to the acquisitiveness of appellant, together with the presumptions arising from the grant, sufficiently attest the validity of the claims in suit."

■ Bearing in mind the standards there invoked, let us examine the claims involved in the present case. We must put ourselves in the place of the patentee at the time of his invention. The only plausible explanation offered for disappearance of accessory visors was the difficulty of attachment. Of course, they could have been screwed to the body, or special attaching posts could have been bolted on, as proposed in 1922 by Mueller 1,424,421. For obvious reasons, this unsightly expedient did not catch the purchasing public's fancy. The problem remained unsolved and the market neglected. National Slug Rejectors v. A. B. T. Mfg. Corp., 7 Cir., 164 F.2d 333, 336. When Peckat began to try out his ideas, open cars had disappeared, with the coming of closed cars, and detachable visors had been off the market for some years, although the demand remained the same. The real reason for the disappearance was the difficulty of attaching visors to the new streamlined cars. Obviously they could have been welded, riveted, or screwed to some member of the body or to special auxiliary members, as proposed by Mueller 1,424,421, but the difficulties surrounding and the undesired results emanating from these methods evidently were deterrents of sufficient force to prevent the appearance of any satisfactory device until Peckat came along. It had not occurred to anyone before that the slight ⅜ inch gutter could act as adequate supports for a large sail-like visor under the most severe wind and rough driving conditions which a car might encounter. It is clear that he was the first to conceive of a visor supported by brackets attached solely to the gutters without bolting. He apparently recognized the aversion to drilling a hole in the family car. He perceived that the enamel on the gutters would act as a lubricant and tend to let friction brackets slip downwardly, and seized upon the idea of clamping on to the gutter and then wedging the clamp firmly without drilling of holes or the use of bolts in or welding or riveting to any member of the car. We think that the fact that the design of a satisfactory gutter wedging clamp was not obvious to those skilled in the automobile accessory field is further shown by the fact that the old friction clamp of detachable visors disappeared and a successful visor of the Peckat type did not appear until he had made known to the world his invention.

■ Findings of fact are not to be upset unless they are clearly erroneous; a court of review will not interfere with them, in the absence of a very obvious showing of error. Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535. But the ultimate question of patentability is whether the device meets the requirement of the statute. 35 U.S.C.A. § 31. Here we have a finding of fact of anticipation because of existing prior art patents. Each of these documents was before the trial court and is before us. Their interpretation, in view of the statute, is as open to us as to the District Court. True, there was some parol testimony in the court below, but we find that it did not in any way throw light upon the question of anticipation by the prior art. Consequently we feel free to review the evidence bearing upon anticipation by the prior patents.

■ There was some testimony also upon the subject of prior use. However, it was by way of deposition, so that the trial court had no more opportunity to observe the witnesses than have we, and, as we have noted, that testimony falls far short of the standards required in the establishment of prior use. Furthermore, as we have pointed out, upon its correct interpretation, it discloses, by the witness' own statement, that the prior use relied upon employed only the conceptions of the old art and not that of Peckat and included in no wise his concept as embodied in his patent. We have no hesitancy in saying that under those circumstances, the findings as to anticipation and as to prior use are clearly erroneous, having no support in the evidence. Other questions re-

lating to the validity of the claims as tested by the requirements of the statute are, obviously, questions of law open to review.

Defendant asserts that it is unselfishly guarding the public interest. The provision for the protection of inventions and creations in the Constitution reflected a beneficent purpose to encourage invention and progress. The law provides that the inventor shall have a limited monopoly, as a reward for his industry and acumen. Here Peckat was engaged only in manufacturing his single device; his patent was much more vital to him, as a small business man, than it would have been to an old established and varied automobile parts manufacturer. Little companies, whose costs are usually relatively high, are properly permitted by law to get started and continue unmolested, for a limited time. One who has exactly copied that which is patented, who so strongly asserts that he is acting to protect the public interest in attacking the claims of the patent, brings himself within the category mentioned in Hawkinson Co. v. Dennis, et al., 5 Cir., 166 F.2d 61, 62: "In short, the case as we have it is one in which the defendants, by the device of presenting themselves as defenders of the public interest, draw attention from the less savory role assigned them by plaintiff as infringers pirating plaintiff's invention. This role of invoking the public interest, 'that is the interest of others than the parties', to enable the defendant to keep the fruits of his contract without standing to his bargain, became so familiar in ordinary contract cases that the courts have latterly been quite slow to follow such interested leading."

The finding that the patent office failed to perform its statutory duties is supported by no proof. In the absence of evidence to the contrary, it is presumed that an admistrative body has performed its functions properly. Here there is no direct evidence of any dereliction upon the part of the patent office. But defendant argues that, inasmuch as no prior art was cited against Peckat, it follows that no search was made. This, we think, is a non se-

quitor, for, considering all the prior art produced by defendant, as we have seen, none of it anticipates or teaches what Peckat presented. Under such circumstances there is certainly no presumption that the patent office did not find it. Rather the presumption of regularity of the proceedings prevails.

We have examined all contentions of defendant. We find nothing included in them impinging in any way upon our conclusions.

The judgment is reversed.