## TRAGER v. CREST SPECIALTY.

### No. 10118.

United States Court of Appeals
Seventh Circuit.

Oct. 16, 1950.

Rehearing Denied Nov. 9, 1950.

Clarence E. Threedy, Chicago, Ill., for appellant.

Max R. Kraus, Sidney Neuman, Chicago, Ill., for appellees.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Defendants appeal from a judgment declaring plaintiffs' patent to Nudelman No. 2,455,266, issued November 30, 1948, valid and infringed. The appeal raises the vital issue of whether the trial court's findings are clearly erroneous.

Recognizing that parents frequently encounter difficulty in persuading their infant children to eat, Nudelman built a device intended to induce them to do so. The problem he faced and abortive attempts to solve it had been disclosed in various patented articles, such as "Coaxer" dishes. In his application, after reciting that it was "a well established fact that children in their early years are poor eaters and parents have to provide various attractions to interest them during feeding time," he stated that his object was to provide a stimulant, consisting of a simulated animal figure in the form of a small pig, having a body portion perched in an almost upright position upon the perimeter of a child's feeding bowl.[1] The figure has a forwardly extending portion projecting toward the interior of the bowl and overlying a portion of it, formed by the animal's front legs. The pig is hollow. Its head opens, forming a mouth into which a spoon may be inserted. Extending from the mouth, in the words of the patentee, "solely downward," is a passageway, the rear wall of which forms an apron so that all the food put in will pass down into the bowl. When one part of the hinged head is raised and the mouth opened the content of the spoon is emptied into it and falls down the passage into the bowl. The device is provided with an undercut which fits upon and engages with the rim of the bowl, preventing separation of the figure from the dish during feeding to insure that food emptied into the image's mouth will pass back into the bowl. The portion of the figure overhanging the interior of the bowl does not extend all the way into that receptacle, so that the latter's area or capacity is not re-

1. Typical Claim 2 is as follows: An amusement device comprising a figure formed to simulate a living creature, said figure comprising a body portion adapted to be placed adjacent the exterior of a feeding bowl, said body portion having a forwardly extending portion adapted to extend closely adjacent to and overlie a portion only of said bowl, said forwardly extending portion having a simulated mouth and a passage, said passage having walls extending solely downward from said mouth through said forwardly extending portion, whereby the contents of a spoon may be emptied into said simulated mouth and fall by gravity into said feeding bowl, said forwardly extending portion including means preventing lateral movement of said passage from over said bowl.

578

duced in any way by the short downward passageway extending from the mouth. The underlying thought is to suggest that the animal is actually eating and swallowing, and thus to encourage and stimulate the child to follow the example, that is, to mimic the pig's action and take food itself. There was testimony that mothers who had experienced difficulty in feeding their infant children, by use of the device, had persuaded the youngsters to eat with much greater relish.

The District Court found the device to be unique and ingenious, to constitute a genuine improvement over any prior device and to be the first to teach the idea of providing an eating table companion for a young child. It found further that the feeding of the companion with the same food and from the same bowl and the appearance of the animal apparently consuming food provide a stimulant for the child to do likewise, and that the device is useful and novel and reflects patentable invention.

In attempting to prove anticipation, defendants relied chiefly upon Smith No. 2,207,417, whose structure, the court found, is not only entirely unlike that of Nudelman but diametrically opposed in purpose and function, having in view an object entirely different from Nudelman's and providing a function entirely foreign to his. The other cited references are so far afield, as the court found and as we agree, that it is unnecessary to consider them. Upon all of the evidence submitted, the District Court found that anticipation had not been proved and that conception and production of a device such as that shown and described by Nudelman is beyond the skill of the mechanic and requires exercise of inventive genius.

A careful examination of the evidence is convincing that the trial court had before it adequate substantial evidence to justify its findings. Upon the issue as to validity the facts are such as to bring the case within the scope of such decisions as Paramount Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997, Wahl Co. v. Andis Clipper Co., 7 Cir., 66 F.2d 162, Pyle Nat. Co. v. Lewin, 7 Cir., 92 F.2d 628, Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794.

The court found also that defendants' device infringes and that it is "literally and in substance" responsive to the claims in suit. Thus, it said, defendants' product consists of an animal figure in the form of a puppy, the body portion being designed and intended to be positioned outside and closely adjacent to a feeding bowl, as in Nudelman, and having a forwardly projecting portion which provides and consists of a simulated mouth, a lower jaw, neck portion and paws, in which is a passageway like that of Nudelman, which also extends downwardly and in open, unimpeded communication with the bowl. The figure's head is separable, thus permitting the contents of the spoon to be emptied into the mouth, as in Nudelman. The front paws overhang the rim of the bowl so as not to reduce the capacity or area thereof. The device has an undercut which engages the bowl and prevents separation of the figure and bowl during feeding so that the food emptied into the figure's mouth will pass back to the bowl, as in Nudelman.

In this connection defendants contend that its passageway from the mouth down into the bowl does not proceed directly downward, as prescribed by Nudelman. It is perfectly obvious that the passageway of each device proceeds downward toward the bowl. Such is the function and such the necessary structure in each, for, otherwise, the essential object of carrying the food down from the head back into the bowl could not be achieved. Considering the description and specifications of Nudelman as well as his claims, it is clear that what he intended by his language was that the passageway should proceed downwardly, without such slant or impediment as would prevent the law of gravity from carrying the food downwardly, as opposed to a passageway proceeding horizontally or at such a degree as to impede or prevent the law of gravity from carrying the food downwardly. Both devices so function; they are equivalents. The test as to whether infringement exists is whether the accused device does the same work in the

same way and accomplishes the same result as the patented device. Nordberg Mfg. Co. v. Woolery Mach. Co., 7 Cir., 79 F.2d 685. The court's finding that defendants' device falls within this limitation, is, we think, supported by substantial and adequate evidence.

Needless to say, if the findings are well grounded in evidence, the judgment based thereon can not ·be successfully attacked. In other words, unless we can say, as a matter of law, that they are clearly erroneous, we are bound by them. Graver Tank & Mfg. Co., Inc., et al. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672, Hazeltine Research, Inc. v. Admiral Corporation, 7 Cir., 183 F.2d 953. Here the court heard the testimony of a number of witnesses, including that of an expert. It expressly found the expert testimony, in certain respects, unworthy of credit. It saw demonstrations of the various devices in court. It passed upon the creditability of the witnesses. It acquired the knowledge that comes from practical demonstration of the two devices. Finally, it made its findings and conclusions of novelty, utility, patentable invention and infringement. To declare them clearly erroneous would be to overturn the trial court's decision upon controverted evidence and to usurp its function of passing upon the creditability of witnesses; this, under the authoritative decisions cited, we are not permitted to do.

The judgment is affirmed.