## O'BRIEN v. O'BRIEN.
### No. 10675.

United States Court of Appeals,
Seventh Circuit.

March 2, 1953.

Arthur A. Olson, Thorley von Holst, and Ralph E. Church, Jr., Chicago, Ill., for plaintiff-appellee, Thiess, Olson, Mecklenburger, von Holst & Coltman, Chicago, Ill., of counsel.

Charles B. Cannon, George H. Wallace, Daniel V. O'Keeffe and Wallace & Cannon, Chicago, Ill., for defendant-appellant.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is a suit for infringement of patent No. 2,467,849, entitled "Portable Electric Rotary Drain Cleaner," issued April 19, 1949, to John V. O'Brien, plaintiff, and James L. von Harz. The latter has assigned his interest to the plaintiff. Defendant interposed the usual defenses of invalidity and non-infringement. The court found all five claims of the patent valid and infringed and, on July 8, 1952, entered its judgment enjoining the defendant from further infringing and ordered an accounting for general damages sustained by plaintiff by reason of said infringement. From this judgment the appeal comes to this court.

The plaintiff, John V. O'Brien, and the defendant, Howard T. O'Brien, are brothers, engaged in the city of Chicago, Illinois, in competition with each other through their respective companies in the manufacture of sewer and drain cleaning tools and devices, including plaintiff's tool of the patent in suit and that of the defendant found to infringe. Plaintiff is the president of Spartan Tool Company, which is the licensee of the plaintiff under the patent in suit, and defendant conducts his business under the name of O'Brien Manufacturing Company. During a period from about July 1, 1941 to March 2, 1943, they were co-partners doing business as O'Brien Manufacturing Company, during which time they were engaged in the manufacture and sale of small portable hand crank operated drain cleaning tools, known as the O'Brien "Speed Gun," as distinguished from the electric or motorized hand drain cleaning tools involved in the present litigation.

The patent invention consists of a tool to be held in the hands of the user for operating a flexible shaft for cleaning drains, consisting of the combination of a motor, a hollow handle secured to one end of the motor and a gear casing secured to the other end, a rotating tubular shaft for driving the flexible shaft, gearing mounted in the casing and connecting the armature of the motor with the tubular shaft, a chuck at the exposed end of the tubular shaft for gripping and releasing the flexible shaft, a stationary guide for the flexible shaft in line with the tubular shaft and extending between the latter and the hollow handle, thus providing a continuous passageway for the flexible shaft through the chuck, the tubular shaft, the stationary guide and the hollow handle.

Claim 5, treated by the District Court as typical, is as follows:

"A portable driving tool for the flexible shaft of a drain cleaning device and embodying therein electric motor means including an armature shaft, means secured directly to one end of said motor means and providing a hollow handle for holding the tool, means secured directly to the other end of said motor means and there providing a hollow casing, means providing a passageway having a straight portion for said flexible shaft between said hollow handle and said hollow casing, a tubular shaft journalled in alignment with said straight portion of said passageway, said flexible shaft being adapted to extend through said tubular shaft, said passageway and said hollow handle respectively, means carried by said tubular shaft outside of said casing and operable to connect said flexible shaft to said tubular shaft, and means in said casing for transmitting power from said armature shaft to said tubular shaft."

Defendant contends here, as below, that the patent is invalid over the prior art and relies not only upon a number of prior art patents cited in the Patent Office but also upon the "Speed Gun" manufactured by the parties while they were doing business together, and upon Sanger, both hand crank operated drain cleaning tools, which were not cited in the Patent Office and which defendant argues are more pertinent than the cited prior art. Defendant makes no contention that the patent in suit is anticipated by any prior art reference; in fact, his expert witness refused to name a prior art patent or device which he considered as the most pertinent reference. It is hardly open to question but that the various elements of the invention were old and that if there is patentable invention it is because of their combination so that by reason thereof a new, useful and beneficial result was achieved in a more efficient, economical and facile manner. Defendant argues, in fact his defense insofar as it relates to validity is that the patentee's combination and arrangement of the elements required no ingenuity other than that possessed by an engineer skilled in the art.

Defendant, as often happens, presents his case here as though this were a trial de novo, and urges, in effect, that this court should examine the prior art and reach its independent conclusion on the issues presented. However plausible this argument may be on a record which contains only documents and physical exhibits, it possesses little if any merit on the instant record, where a large amount of oral testimony was heard by the District Court. Each side presented a number of witnesses, including engineers who qualified as experts; in fact, the printed record contains 240 pages of oral testimony. Much of the testimony of the expert witnesses was devoted to an explanation of the accused device, the patent in suit, as well as the prior art relied upon by the defendant to invalidate the patent. A reading of this testimony raises a question as to how informed witnesses could differ so radically on matters purportedly within their common knowledge. The trial court, of course, heard their testimony and, as in any other kind of a law suit, it was the function of that court to appraise their testimony.

The District Court made extensive findings of fact, both on the issue relating to invention and that of infringement. A reading of the testimony, particularly that of the expert witnesses, is convincing that the record furnishes substantial support for such findings. True, there is evidence favorable to defendant's theory of the case, at least on certain subsidiary issues, but even though we assume that such testimony would support findings in his favor, we are still faced with the fact that the court in its judgment chose to make findings predicated upon testimony favorable to the plaintiff. Under such circumstances, is it the function of this court to ignore such findings and to make an independent analysis and determination of the issues in controversy? We think the answer is no. This court, in Hazeltine Research, Inc. v. Admiral Corporation, 7 Cir., 183 F.2d 953, following the teaching of the Supreme

Court in Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672, held that Rule 52 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., required that the same consideration and weight be given to the findings in a patent case as in other. This reasoning has been applied in many subsequent cases. Trager v. Crest Specialty, 7 Cir., 184 F.2d 577, 579; Jones v. Bodaness, 10 Cir., 189 F.2d 838, 841; Hamilton Mfg. Co. v. Illinois Surgical Supply Co., 7 Cir., 193 F.2d 938, 942; Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 7 Cir., 194 F.2d 945, 947; Holland Co. v. American Steel Foundries, 7 Cir., 196 F.2d 749, 750.

Notwithstanding such an imposing recognition of the rule, the argument is still heard, as it was in this case, that such findings are not controlling. Those who so argue cite Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. Certainly the opinion of the court in that case does not expressly repudiate its holding in Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 275, 69 S.Ct. 535, 93 L.Ed. 672, on the point under discussion, even though it was thought by two of the Justices who joined in a concurring opinion that the court had done so. Some further doubt is cast in the minds of this court on the holding in the Graver case by our experience in Trager v. Crest Specialty, 7 Cir., 184 F.2d 577. There, this court affirmed a holding of validity and infringement largely upon the findings made by the District Court. The Supreme Court in a Per Curiam opinion, 341 U.S. 912, 71 S.Ct. 733, 95 L.Ed. 1349, reversed, citing only Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. Whether this is any indication that the Supreme Court has or is about to retract or modify its emphatic pronouncement in the Graver case on the weight to be attached to the findings in a patent case, we do not know. However, until the Supreme Court has expressly done so, we think this court should evaluate the findings in a patent case the same as in any other.

With this view of the situation, it would be abortive effort to enter into a discussion and analysis of the prior art relied upon by defendant to invalidate. We certainly are not convinced from our study and examination of this prior art that the patentee's invention was nothing more than that attributable to the skilled artisan. A number of circumstances clearly developed in the trial point to the opposite conclusion. There was a long felt want for a power driven tool, to be held in the hands, to clean drain pipes, and the patentee was the first to perfect a solution for the problem. The device of his solution enjoyed immediate commercial success. There was testimony that the plaintiff presented the problem to two mechanics trained and experienced in the industry, who were unable or at any rate failed to contribute to its solution. The defendant, presumably skilled in the art, brought out his alleged infringing device only after he had the benefit of an inspection of plaintiff's device. If a solution of the problem was within the domain of the skilled mechanic, it is, in the language of the District Court, "inconceivable that some mechanic would not have filled this long felt need before the filing of the application for the patent in suit." The circumstances thus enumerated, the presumption of validity attached to the grant, together with the findings of the District Court, require, so we think, that the adjudication of validity be affirmed.

On the issue of infringement, it is hardly disputed but that defendant's device is an almost exact replica of that of the plaintiff. Plaintiff's expert witness testified, "The two are the same devices. They have the same arrangement of parts. The parts perform the same function in each of the two devices and they get the same results in the same way." Defendant's witness Rausch had before him plaintiff's device when he prepared the drawing for defendant's device. He also admitted that claim 5 reads on defendant's device. Claim 4 calls for an element not found in the other claims, that is, "said casing and said handle section having flanges interfitted with the opposite ends of the motor unit." In defendant's device bolts are used to align the parts in-

stead of the flanges called for by this claim. The court found not only that defendant's device incorporated "every element, or its equivalent, of every other claim of said patent," but also that "when defendant's engineer designed the defendant's device * * he had before him and substantially copied plaintiff's device." And the court found that the bolting alignment of defendant was the "equivalent of the flanges called for by claim 4."

Defendant in order to escape infringement places great reliance upon its contention that plaintiff's claims must be limited to a conventional or standard type of motor procurable in the open market. Plaintiff in his device utilizes such a motor, in contrast to defendant's device, which embodies a special motor built into a special casing. All of the claims in suit merely call for an electric motor unit or electric motor means. None of them calls for a particular kind of motor, that is, neither the conventional type as used by plaintiff nor the special type embodied in defendant's device. A reading of the specifications and a study of the file wrapper history are convincing that the contention is not sound. It is true the patentee in his specifications states that an object of the invention is to provide a device so constructed that "it is possible to employ a conventional type of motor, thus avoiding the expense of building a special motor into a special casing," and, as a further object, to provide a tool which "includes a conventional type of motor." At another point, he refers to an electric motor which "is preferably a universal and reversible motor of conventional type that can be purchased in the open market." In our view, these statements mean no more than that the patentee was expressing a preference for the conventional type motor. They do not constitute a limitation as to the type of motor to be employed. This is particularly so when consideration is given to the claims containing no such limitation.

The history in the Patent Office is likewise of little aid to defendant's contention. It is true that the patentee, in distinguishing Schneider, No. 1,650,911, pointed out that the motor called for in that patent was not a "unitary motor and casing," but numerous other advantages were claimed over the Schneider reference and there is nothing to indicate that the claims were allowed because of the type of motor which the patentee suggested was preferable. It is hardly reasonable to think that the patent would have issued over the prior art merely on this particular feature without including it in the claims which, after all, measure the grant. That the type of motor was not the inducing cause for the grant was further shown by the fact that previously all claims submitted were denied, even though the patentee at that time represented to the Patent Office that one of the advantages of his invention was a "standard motor." That argument evidently did not appeal to the Patent Office and we see no reason to think that the later claim of an advantage in a "conventional motor" altered the situation. The Patent Office must have been persuaded because of reasons advanced other than the type of motor suggested.

The judgment on both the issues of validity and infringement is

Affirmed.