The EKCO PRODUCTS COMPANY, Inc., Plaintiff-Appellant,

v.

CHICAGO METALLIC MANUFACTURING COMPANY, Defendant-Appellee.

No. 13770.

United States Court of Appeals
Seventh Circuit.

Aug. 16, 1963.

Will Freeman, Bair, Freeman & Molinare, Chicago, Ill., (George B. Newitt, Norman Lettvin, D. D. Allegretti, Robert D. Teichert, Chicago, Ill., of counsel), for plaintiff-appellant.

Dugald S. McDougall, Herman I. Hersh, Theodore R. Scott, Chicago, Ill., for defendant-appellee.

Before DUFFY, KNOCH, and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, The Ekco Products Company, Inc., (hereinafter called "Ekco") brought

this action to recover damages and injunctive relief for alleged infringement by defendant, Chicago Metallic Manufacturing Company (hereinafter called "Chicago Metallic"), of four United States patents owned by plaintiff. These patents are:

(a) No. 2,687,994, dated August 31, 1954, entitled "Method of Forming an Oxide Coating on Tin."

(b) No. 2,724,526, dated November 22, 1955, entitled "Tin Plate Baking Pan."

(c) No. 2,773,817, dated December 11, 1956, entitled "Composite Metal and Articles Thereof."

(d) No. 2,801,604, dated August 6, 1957, entitled "Processed Drawn Implement."

They will be referred to hereinafter respectively as the 994, 526, 817 and 604 patents.

Defendant denied infringement of the first three patents and pleaded invalidity of all four. After trial by the District Court without a jury, judgment was rendered for defendant, holding all the patents invalid and the first three not infringed. This appeal followed.

The history of commercial bread baking discloses an accepted practice of many years known as "burning in" or "burning out" whereby the highly reflective tin-plated steel of the pan is darkened so that it will absorb sufficient heat for proper baking. This practice was not uniformly successful and entailed loss of time and labor, tying up equipment in non-productive work.

During the 1940's plaintiff continued its search for a solution. Dr. John J. Russell, one of the patentees in each of the patents in suit, was plaintiff's chief chemist during the period from 1945 to 1947, when he became plaintiff's Director of Research. His notes on the events leading to the subject matter of the basic patent in suit, 994, are part of the record before us. Plaintiff had tried various methods and had achieved some success, but only by the expensive method of hand rubbing the tin-plate to roughen its surface prior to passing the pan through the ovens.

Chicago Metallic contends that it did solve the problem in 1947 with its "No-Burn" pan which it asserts it sold to the fullest extent of its production capacity until the introduction of glazing about the end of 1949.

Chicago Metallic's process consisted of painting the outer surfaces of the pan and then heating it for one to two hours. While this coating did not permanently darken the pan, Chicago Metallic asserts it permitted immediate use of the pan while gradual "burn-in" conditioning occurred as the painted coating slowly wore off. Chicago Metallic argues that plaintiff's own "Redi-Bake" pan infringed Chicago Metallic's patented "No-Burn" pans.

Late in the 1940's the use of a release coating or "glazing" replaced the traditional grease means of insuring that the baked loaf would readily separate from the pan. The plastic "glaze" must be replaced from time to time. The chemical use to strip away old glaze also stripped away the "No-Burn" coating.

On February 7, 1950, John Crombie, a representative of United States Steel, visited both Ekco and Chicago Metallic to show their personnel a sample of anodically oxidized tin-plate, and certain literature (of British publication) of the International Tin Research Council. Mr. Crombie did not testify at the trial, but we have his deposition which is a part of the evidence adduced at the trial by Chicago Metallic. Mr. Crombie did not himself make, direct, or witness the making of the sample. He had referred the United States Steel Research Laboratory to the publications. Mr. Crombie described the sample as "not exactly black, it was kind of a dark gray and it was very close to the appearance of a bread pan when it was burned out in the old fashioned way of doing it."

Mr. Crombie made no suggestions for further heating. He stated that British patents were pending. He took both the sample and the literature away with him.

The scientific world had known about anodic oxidation of tin and other metals, but nobody evidently had used the process to pre-darken baking pans.

■ According to Dr. Russell's contemporaneous notes the literature exhibited by Mr. Crombie was the work called in this litigation "the Kerr-Macnaughtan paper." The British Patent No. 486,752 carries Serial No. 3756 of 1936, the same serial number referred to in the Kerr-Macnaughtan paper which disclosed the procedure mentioned by Mr. Crombie. All this material was before the Patent Office when the patents in suit were issued. This fact supports the presumption of validity normally arising from grant of a patent by the Patent Office. Title 35 U.S.C. § 282; Hazeltine Research, Inc., v. Dage Electric Co., Inc., 7 Cir., 1959, 271 F.2d 218, 224; Amp, Inc. v. Vaco Products Co., 7 Cir., 1960, 280 F.2d 518, 521, cert. den. 364 U.S. 921, 81 S.Ct. 286, 5 L.Ed.2d 260.

The sample which Mr. Crombie exhibited is described in Dr. Russell's notes as black. In the course of subsequent experiments, Dr. Russell observed that heating a sheet of tin-plate darkened by the anodic process of Kerr-Macnaughtan at a temperature close to the melting point of tin changed the black film thereby acquired (which the British Patent No. 486,752 stated "cannot be dyed or otherwise changed in color") into an olive green. The Kerr-Macnaughtan paper entitled "The Production of Black Anodic Coatings on Tin and Tin Alloys" discusses an intense blue-black film on tin articles adaptable for decorative purposes. The disclosure made by Mr. Crombie is the disclosure of this Kerr-Macnaughtan paper. British Patent 486,752 also discloses a process for obtaining a black or blue-black film which, as previously indicated, "cannot be dyed or otherwise changed in color." Nobody suggests that the blue-black film of Kerr-Macnaughtan is a satisfactory coating for baking pans. In contrast to the black film which can be scratched and which wears off in service, the converted olive green surface obtained by Ekco's heating step is permanent,

adherent, uniform, highly abrasion resistant, and possesses the desired heat-absorbing characteristics of a bread baking pan which needs no "burning-in." Ekco thus developed its two-step process described by Ekco as:

"The basic patent in suit covers a simple two-step process. The first step is the forming of a blackish anodic oxide coating on a tin article, and was admittedly old. This blackish coating proved to be highly unstable and was never used commercially on baked pans.

"The second step of Ekco's process is the converting of this unstable blackish coating by heating under prescribed conditions to a desirably stable, tenacious, highly-resistant coating. The remarkable improvement in the characteristics of the coating was accompanied by a change in the color from blackish to olive-green."

Ekco began commerical use of its new process under the trade name "Bake-Prep" early in 1950 (about March) with prompt and widespread acceptance and commercial success, which must be attributed to the process itself as there is no evidence that any unusual advertising or other means was used.

Chicago Metallic argues (and the District Court agreed) that the long-felt want for pans which could be used without preliminary "burning-in" allegedly satisfied by Ekco's product, was in fact already satisfied by Chicago Metallic's "No-Burn" pans; that a short-duration want for pre-darkened pans which could successfully withstand stripping of glaze arose in 1949 and was shortly satisfied by John Crombie's concept which he passed on to the entire baking-pan industry.

■ We are not required to accept the findings of the District Court if they are unsupported by the evidence or clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a). Copease Mfg. Co. v. American Photocopy Equipment Co., 7 Cir., 1961, rehrg den. 1962, 298 F.2d 772, 781.

Experienced, expert baker witnesses, for both parties, agreed that Ekco's "Bake-Prep" (or the accused device of Chicago Metallic) provided the solution to a long felt want in commercial baking. Richard J. Livingston, Chicago Metallic's expert baker witness, described cleaning pans during the pre-glaze days when grease had to be used. He testified that bakers were looking for a detergent which would take the grease off without taking the metal and the "burned-in" film off as well. In 1960, after this suit had been filed, Chicago Metallic experimented with another painted coating which proved a failure and was withdrawn from the market.

■ The presumption of validity arising from grant of the patent is strengthened by a showing that the invention filled a long felt want. O'Brien v. O'Brien, 7 Cir., 1953, 202 F.2d 254, 256.

In September, 1950, Chicago Metallic announced its accused device "Sure Bake" pans, which are made by a two-step process charged to infringe Ekco's patents in suit. Chicago Metallic's position is that Dr. Russell's research,

" * * * on which the patents in suit are based, consisted entirely of (a) procedures taught to Russell by John Crombie, plus (b) a heating step, undertaken for conventional reasons, that produced the conventional result taught by prior literature."

Chicago Metallic attributes Ekco's earlier manufacture of the new pans to two factors: (1) Ekco had entered the glazing field in the fall of 1949 and by February, 1950, was already concerned with the attendant problems; and (2) Ekco was under notice from Chicago Metallic that its "Redi-Bake" pans infringed Chicago Metallic's "No-Burn" patent.

Chicago Metallic did not begin glazing its pans until late in May, 1950; hence Chicago Metallic asserts it had no need to make its own adaptation of the procedures suggested by Mr. Crombie until it, in its turn, encountered glazing problems.

Chicago Metallic contends, and the District Judge so found, that the claims of the basic patent 994 were anticipated by the Crombie-Kerr-Macnaughtan prior art, and that the heating step lacked invention. It is asserted that Ekco' second step was a mere conventional step, an inevitable corollary of Mr. Crombie's basic concept, and that it was a matter of mere common sense to heat a baking pan, particularly in the light of prior knowledge respecting heating oxide coatings to stabilize them.

■ The second step does now seem simple, natural and obvious, but its apparent simplicity should not blind us to its merits. Shumaker v. Gem Mfg. Co., 7 Cir., 1962, 311 F.2d 273, 275–276. In June, 1950, it was evidently not obvious. When Mr. Crombie called on Ekco he was accompanied by Mr. J. M. Wood, also of United States Steel, who was present and saw the exhibit of the black sample shown to Ekco. Yet even after Ekco's pan had been introduced commerically, a memorandum drawn by Mr. Wood on June 6, 1950, reads:

"We have subsequently learned that Ekco has developed a rapid oxidizing technique which they are currently using on bread pans prior to glazing. Since Ekco is attempting to patent their process, they are secretive concerning the details; however, we have seen the finished pans which carry a very uniform tan appearance. Dr. Russell has promised to acquaint us with all details regarding this treatment when conditions are suitable."

The same day, in another memorandum, Mr. Wood states of Chicago Metallic, which also knew of the Crombie-Kerr-Macnaughtan disclosures, that:

" * * * this customer had expressed no interest in the Kerr-McNaughton treatment until just recently. They exhibited a pan treated with Ekco's new process but were not aware of the details as to how the color was obtained."

Evidently, Chicago Metallic was interested in the process but was unable to deduce it solely with the aid of the prior art and

the generally known scientific principles to which it now invites our attention. The presumption of validity of a patent is strengthened by the unsuccessful efforts of others laboring in the same field. Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 1949, 178 F.2d 794, 801, and cases therein cited.

It is also significant that in advertising in Bakers Weekly, published as late as May 29, 1950, Chicago Metallic warned against use of chemically treated pans, stating that chemical treatment resulted in a finish which was not as wear resistent as the true oxide gradually produced by oven heat. Chicago Metallic's skepticism supports Ekco's contention that its process was not obvious. McKee v. Graton & Knight Co., 4 Cir., 1937, 87 F.2d 262, 264.

The wide-spread success of the new process is not questioned. After adopting it, Chicago Metallic discontinued other methods of pretreating bright tin-plate baking pans.

Our attention is invited to the Kerr paper "Anodic Films on Tin in Sodium Hydroxide Solutions (1938)" which was not before the Patent Office when the patents in suit were issued. We have studied this document which discusses electroplating or electro-deposition of tin, and which reports on various tests made. It deals principally with yellow and brown films formed during electroplating. We cannot agree that it is closer to the basic 994 patent than the file wrapper references which were before the Patent Office. There is no suggestion even that it is desirable to form a heat-absorbing tin oxide coating on tin articles. The Kerr article talks of removing the yellow or brown film from the tin by cathodic treatment.

■ There was a long felt need. Others in the field had sought to fill it. The first step—anodic oxidation to form a black film was known. There was no prior art suggestion of the second step—heating the tin coated with anodic film to convert the anodic oxide film to green oxide of tin with all its superior features of stability, tenacity and high resistence. Ekco's invention met prompt recognition and adoption as a solution. The patent is not vague and indefinite, as charged by Chicago Metallic. The heating step is defined in specific degrees. The length of time is defined by the color change. Anyone skilled in the art may follow the process with successful results. Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 7 Cir., 1960, 281 F.2d 252, 256–257, cert. dismissed 366 U.S. 211, 81 S.Ct. 1091, 6 L.Ed.2d 239. We must conclude that the District Court's findings of invalidity of the basic patent 994 were clearly erroneous.

With respect to infringement of the basic patent 994, Chicago Metallic argues that its teaching is limited to anodic oxidation of tin articles in acid electrolytic baths or in mildly alkaline electrolytic baths with pH not exceeding a value in the neighborhood of 8. The District Court found that Chicago Metallic's anodic oxidation was conducted in a highly alkaline bath of pH 10, 100 times as alkaline as the most alkaline bath taught in the basic 994 patent; that major ingredients of Chicago Metallic's alkaline bath were sodium hydroxide and sodium dichromate, neither of which was mentioned in the patents in suit. The District Court therefore concluded that Chicago Metallic had not infringed the basic patent 994.

■ However, Ekco never contended that formation of a black anodic coating was a novel feature; nor is this a case of file wrapper estoppel. Nevertheless, the basic patent 994 does state that successful results have been obtained under alkaline conditions. We may not dispose of the question of infringement merely by comparing the commercial processes of the respective parties, particularly with respect to the first step. Chicago Metallic cannot avoid infringement by varying the details of the apparatus by which it makes use of the disclosure in the patent. Smith v. Snow (1935), 294 U.S. 1, 20, 55 S.Ct. 279, 79 L.Ed. 721. We must consider the disclosure of the patent in suit. The record does clearly

indicate that Chicago Metallic follows Ekco's novel second step, heating the black anodic oxide to convert it to green oxide of tin.

■ The District Court held the 526 patent invalid on findings of fact that (1) the claims "read" on a well burned-in baking pan of the prior art in the same manner and sense as on a baking pan oxidized by the anodic process; (2) that the numerical limitations in the claims relative to layer thickness do not correspond to any distinctive result or function—all that is required being a layer of free tin "thick enough to provide effective resistence to corrosion;" and (3) the patent was granted only after the Patent Office examiners had been assured, possibly in good faith, but in error, that oxide film on burned-in pans of the prior art was not olive green in color and of "very poor adherence."

Our search of the record does not reveal support for these findings. On the contrary the testimony did indicate that normal burn-in procedures increase the thickness of the outer layer of darkened tin oxide and the inner layer of iron-tin alloy at the expense of the intermediate layer of free metallic tin which is necessary to resist corrosion, and that Ekco's basic two-step process provides a relatively thick outer layer while restricting the growth of the inner layer. This structural combination (claim 2 of the 526 patent) is not revealed in the prior art.

■ The original thickness of the iron-tin alloy layer in Chicago Metallic's accused pans is greater than that described in the 526 patent, but that thickness is controlled by the steel mill from which Chicago Metallic purchases its tin-plate. Chicago Metallic's pans otherwise respond identically to the combination of claim 2 of the 526 patent and embody the substance of the invention. The claim must be construed to cover the actual invention and may not be limited by extraneous remarks in argument unaccompanied by actual amendment of the claim. Bassick Co. v. Faultless Caster Corp., 7 Cir., 1939, 105 F.2d 228, 231. With fur-

ther respect to the issue of infringement, the District Court relied on the description in the 526 claims of an "opaque" oxide coating and the fact that the coating on Chicago Metallic's pans was allegedly transparent. The testimony on this point, however, indicates that the film was found to be transparent after it was stripped off the pan. We are satisfied from our reading of the claims that the use of the word "opaque," there refers to the outer oxide layer on the pan.

■ The 817 patent discloses application of a glaze release film to the anodic coating prior to the second heating step, so that the second heating conversion step simultaneously cures the glaze and converts the anodic oxide to green oxide of tin, thus effecting both economy and efficiency. The parties stipulated that during production Chicago Metallic does deposit glaze on an oxide layer on some of its pans and during later heating cures the glaze and converts the anodic layer. Imperfect practice of the patented process does not avoid infringement. Colgate-Palmolive-Peet Co. v. Lever Bros. Co., 7 Cir., 1937, 90 F.2d 178, 194, cert. den. 302 U.S. 729, 58 S.Ct. 54, 82 L.Ed. 563. The specific language of the patent itself contradicts the findings as to the teaching of patent 817.

The 604 patent defines a sequence of steps whereby scratches, or draw marks, obtained after anodic oxidation and during a metal deforming operation, unexpectedly disappear during the last step of subjecting the drawn implement to the elevated temperature for converting the anodic oxide of tin. Chicago Metallic does not deny that it practices the steps of the claimed process.

Again, we are unable to discern in the record before us any support for the finding that the steps recited in the claims in suit of patents 817 and 604 are old, yielding no new result.

The findings concerning the three derivative patents, 526, 817 and 604, which are only briefly mentioned by the District Court (apparently because of the decision concerning the basic 994 pat-

ent) are extremely limited. The judgment of the District Court respecting these three derivative patents is reversed, and that portion of this case is remanded for further consideration in the light of our comments above.

The judgment respecting invalidity and non-infringement of the basic 994 patent is reversed.

The cause is remanded for further proceedings consistent with this opinion.

Other arguments advanced by the parties not specifically mentioned in this opinion have been considered with care. They do not alter the conclusions herein expressed.

Reversed and remanded with instructions.