(STANDARD OIL CO. v. SOUTHERN PAC. R. CO. *et al.*)

*Circuit Court, N. D. California.* October 12, 1891.)

PATENTS FOR INVENTIONS—COMBINATION—OIL-CARS.
Letters patent No. 216,506, issued June 17, 1879, to M. C. Brown, for an improvement in cars, consisting in a division of the car into two or more parts, some of which shall be constructed as tanks for carrying oil, while others are fitted for ordinary merchandise, the object being to carry such merchandise on the return trip, and thus obviate the necessity for hauling empty oil-cars for long distances, are void for want of patentable combination.

In Equity.
*Pillsbury & Blanding* and *Langhorne & Miller*, for complainant.
*John S. Boone* and *S. C. Denson*, for respondents.

HAWLEY, J. This is a bill in equity for the infringement of letters patent No. 216,506, granted to M. Campbell Brown, June 17, 1879, and assigned to complainant, for "improvement in oil-cars." The specification in the patent recites as follows:

"My invention relates to cars, and especially to that class of cars designed for transporting merchandise and oil or other liquids, and it consists in the parts and combination of parts hereinafter described and claimed, whereby oils or other liquids may be safely transported in the same car with miscellaneous merchandise. * * * The object, as briefly above stated, of my device, is to produce an improved form of car for the transportation of oils and liquids in bulk, and which shall also be adapted for the transportation of ordinary merchandise on roads where a load of oil or liquid cannot be obtained on return trip, thus obviating the necessity of hauling empty tank-cars over long distances, as is now commonly done; and to this end the construction of the ordinary freight-car is modified as follows: The car space is divided into two or more compartments; but, for the purpose of the present specification, we will suppose it to be divided into three. The central compartment, as shown in the drawings, would embrace about two-thirds of the entire length of the car, and is designed and adapted for ordinary storage, and for this purpose may be constructed in any proper manner. The two end compartments occupy each about one-sixth of the entire length of the car, are located in the ends thereof, over the trucks, and are designed and constructed to contain metallic tanks, * * * which tanks are adapted for safely containing and transporting oil or other liquid. * * * I am aware that the several features embodied in my improvement are not independently new, and I restrict the invention to the specific combination of parts set forth in the claim. What I claim is: A car subdivided into two or more compartments, each end compartment containing an oil-tank; said tank constructed with an inclined or self-draining bottom, and resting upon a floor, formed in counterpart thereto; said tank also having a tapering or inclined top, with a filling opening placed at or near its highest point, and in line with a filling opening in the car-top, and there being a removable partition, separating said tank from the next adjacent compartment, all combined as substantially set forth."

Is this invention a mere aggregation, or is it a patentable combination? What is the distinction between mere aggregation and a patentable combination? A combination of well-known separate elements, each of which, when combined, operates separately and in its old way, and in which no

new result is produced which cannot be assigned to the independent action of one or the other of the separate elements, is an aggregation of parts merely, and is not patentable. But if to adapt the several elements to each other in order to effect their co-operation in one organization demands the use of means without the range of ordinary mechanical skill, then the invention of such means to effect the mutual arrangement of the parts would be patentable. The parts need not act simultaneously, if they act unitedly to produce a common result. It is sufficient if all the devices co-operate with respect to the work to be done, and in furtherance thereof, although each device may perform its own particular function only.

In *Hailes* v. *Van Wormer*, the court said:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be the product of the combination, and not a mere aggregation of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one, by bringing together several old devices without producing a new and useful result, the joint product of the elements of the combination, and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations; or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others in the combination." 20 Wall. 368.

In *Reckendorfer* v. *Faber*, the court said:

"The combination, to be patentable, must produce a different force or effect or result in the combined forces or processes from that given by their separate parts. There must be a new result produced by their union. If not so, it is only an aggregation of separate elements." 92 U. S. 357.

In *Pickering* v. *McCullough*, the court said:

"In a patentable combination of old elements all the constituents must so enter into it as that each qualifies every other. * * * It must form either a new machine of a distinct character and function, or produce a result due to the joint and co-operating action of all the elements, and which is not the mere adding together of separate contributions." 104 U. S. 318.

Numerous other authorities might be cited, substantially to the same effect. The law is well settled, the principles clearly defined. The dividing line between mere aggregation and patentable combinations is well established. Every case must fall upon one side or the other. No case stands directly on the pivotal line. But the facts are often of such a character as to make it difficult to determine upon which side of the border line the case should be classed. This difficulty arises in the application of the facts to the principles of the law so frequently announced by the supreme court of the United States. If the question is considered doubtful, the court should overrule a demurrer to the bill, in order to have the question fully presented upon the final hearing. *Standard Oil Co.* v. *Southern Pac. Co.*, 42 Fed. Rep. 295, opinion by Judge SAWYER.

And in such a case the court for like reasons would be justified in cases of great hardship to refuse an injunction, or dissolve a restraining order if one is temporarily issued. *Standard Oil Co.* v. *Southern Pac. Co.*, decided by Judge HOFFMAN. But when the case comes up on final hearing it is the duty of the court to assume the responsibility of actually determining upon which side of the border line the case falls. To properly decide this question the court should constantly bear in mind not only the principles of law applicable to such cases, but must keep in view the reasons for the rule upon which said principles were founded.

The several features embodied in complainant's improvement are admitted not to be independently new. The contention is that new and useful results are reached that were not hitherto attainable under the prior state of the art. The result claimed to be new is the cheaper transportation of oil in bulk over long hauls; that is, by the combined use of the patented car complainant is enabled to save the expense of $95 hitherto paid for the expense of the return of an empty car. It is not claimed that the carrying of oil one way co-operates directly with the performance of carrying dry merchandise the other way, but the point relied upon is that the two co-operate directly in the performance of carrying merchandise both ways, thereby producing a common result, viz., a reduction of the cost of transportation of oils by successive acts performed in different parts of the service of the car; this result being, as before stated, in saving the dead loss of hauling empty cars one way. If this contention is sound, then the patent must be maintained. Is it tenable? I am of opinion that it is not. The construction of this patent, as contended for by complainant, would, in my judgment, be extending the principle of patentability of inventions beyond the rules laid down by the supreme court of the United States in its recent decisions upon this subject. The patentee admits that the several features in his improvement "are not independently new." Upon the hearing prior patents were introduced, which embodied the general feature of carrying oils or liquid and dry freight at the same time, or "for liquid freight in one direction and dry freight in the other." Do the elements of the car and of the oil-tank combined so co-operate as to produce a new result by their joint union? Successive action of old parts, where they all relate to each other, and all work to a common end to perform a common result, if the result is new, are patentable, but in all cases it must be a result which is due to the successive action of these parts. In *Reckendorfer* v. *Faber, supra*, numerous illustrations are made. There the combination relating to the manufacture of combined pencils and erasers consisted only of the application of a piece of rubber to one end of the same piece of wood which makes a lead-pencil. The court said:

"It is as if a patent should be granted for an article  *  *  *  consisting of a stick, twelve inches long, on one end of which is an ordinary hammer, and on the other end is a screw-driver or a tack-drawer.  *  *  *  It is the case of a garden-rake, on the handle end of which should be placed a hoe, or on the other side of the same end of which should be placed a hoe. In all

these cases there might be the advantage of carrying about one instrument instead of two, or of avoiding the liability to loss or misplacing of separate tools, [and the court might have added that the cost of manufacturing the articles would be much less, and that the combined articles could be sold cheaper than the separate articles could.] The instruments placed upon the same rod might be more convenient for use than when used separately. Each, however, performs its own duty, and nothing else. No effect is produced— no result follows—from the joint use of the two."

Now, in the case of the lead-pencil and eraser, the hammer and screw-driver, and with the garden-rake and hoe, there was not only a convenience and cheapness in the manufacture of the articles, as combined, but in their use. Time would be saved in the work to be performed by having the articles in the combined instrument; and, if the sole question of cheapness in the use was to govern, then the decision in the *Faber Case* should have been the other way. The patent should have been sustained. The new result to be accomplished, in order to take the case out of the rule of aggregation of separate elements as laid down by the supreme court, must be a result produced by the manufacture of the article or machine itself, its operation, union, and effect. Such illustrations are made in the case already cited, as, for instance, the frame in a saw-mill which advances the log regularly to meet the saw, and the saw which saws the log. The two co-operate and are simultaneous in their joint action of sawing through the whole log. Or in the sewing-machine, where one part advances the cloth and another part forms the stitches, the action being simultaneous in carrying on a continuous sewing. A stem-winding watch-key is another instance. The office of the stem is to hold the watch or hang the chain to the watch; the office of the key is to wind it. When the stem is made the key, the joint duty of holding the chain and winding the watch is performed by the same instrument. A double effect is produced, or a double duty performed, by the combined result. In these and numerous like cases the parts co-operate in producing the final effect; sometimes simultaneously, sometimes successively. The result comes from the combined effect of the several parts, not simply from the separate action of each. In this case there is no joint operation or effect in the construction of the railway car and the oil-tank combined which is in any manner due from the simultaneous or successive action of the two as combined. It is a mere aggregation of old elements, producing no new result by the combination.

I deem it unnecessary to notice the contention of complainant's counsel relative to the peculiar construction of the car, further than to say that I have carefully examined this question, and, while it may be admitted, for the purpose of this decision, that the construction is such as to distinguish this case in some respects from *Densmore* v. *Schofield*, 102 U. S. 375, which it is contended was for a claim for "the combination of a tank and a car, however united," it is not sufficient, in my opinion, to take this case out of the rule as stated in the other cases to which I have referred. I have not, in the consideration of this case, overlooked the fact so frequently announced that patents for inventions should always be liberally construed, and all doubts, if any exist, should be

solved in favor of the patentee. I realize to the fullest extent the importance and necessity of upholding, sustaining, and encouraging the inventive skill and genius of the country. To quote the language of the supreme court of the United States:

"Patentees, as a class, are public benefactors, and their rights should be protected. But the public has rights also. The rights of both should be upheld and enforced by an equally firm hand whenever they come under judicial consideration."

The bill is dismissed.