**CHURCH OF RELIGIOUS SCIENCE,**
a Church corporation,

v.

**KINKEAD INDUSTRIES INCORPO-
RATED, a corporation.**

**No. 50 C 1813.**

United States District Court
N. D. Illinois, at Chicago.

Nov. 7, 1955.

Raymond L. Greist, Chicago, Ill., for plaintiff.

Charles W. Rummler, Chicago, Ill., for defendant.

HOFFMAN, District Judge.

This action was brought for infringement of claims 1, 2, 3, 5 and 6 of United States patent 2,440,741, granted May 4, 1948, to Walter E. Selck and Company, an Illinois corporation, as assignee of the inventor, Herbert D. Drain. After this suit was filed, but before trial, the patent was acquired from Selck by the present plaintiff, Church of Religious Science, which is a California church corporation and the present owner of the patent and the right of recovery for past infringement. The defendant, Kinkead Industries, Inc., is an Illinois corporation doing business at Chicago, Illinois.

The patented device was designed as an efficient, water-tight sink mounting which could be installed on-the-job with relatively few parts suitable for marketing as a kit and with the aid of simple tools. The claims in issue in this suit, when taken together, describe a sink mounting assemblage which consists of three principal parts:

1) Corner brackets for temporarily supporting the sink in the opening, including adjustable means for positioning the sink on the vertical direction.

2) A metal strip or ring made in the form of a T with the stem located between the sink and the drainboard. The head of the T overlaps the drainboard on one side and the sink flange on the other.

3) Clamping members, separably and pivotally attached to the stem of the T and arranged to exert a suitable set of forces to provide the clamping action mentioned above.
Claim 1 describes the T-shaped metal ring and clamping members and the cooperative function of these parts while claims 2, 3, 5 and 6 additionally include the supporting brackets and their function.

The supporting (corner) bracket, as illustrated in the patent, consists of a lug secured to the drainboard with an arm extending into the sink opening through which a vertical adjusting screw is inserted. When the sink is lowered into the opening, the sink flange rests on the adjusting screw and thus permits the sink to be adjusted in relation to the top surface of the drainboard. As commercially marketed, plaintiff's corner bracket differs somewhat from the one drawn in the patent. It consists of a flat metal bar attached at each end to the drainboard and running diagonally across the corner of the sink opening (there are four brackets, one for each corner). In the center of the bar is a vertical post upon which the sink flange rests. The level of the sink bowl can be adjusted by bending the vertical post.

Once the sink bowl is rested on the corner brackets, the T-shaped sealing ring is inserted between the drainboard and the sink bowl. On the plaintiff's device the vertical leg of the T is provided with an upwardly turned hook-like formation. The clamping bars or lugs (which are separate parts) are also provided with a hook formation which latches engagement with the hook on the leg of the T ring. A vertical extending screw is projected upwards through a hole in the end of the clamping lug and onto the bottom surface of the sink flange. This produces a double clamping action in which the sink flange and drainboard are pushed upward into sealing engagement with the arms of the T while the T-shaped frame is drawn downward tightly into a sealed position.

The defendant's principal defense is that its Kintrim T-type Sink Rim No. 800, the accused device, does not infringe the patent in suit. The accused device, as the defendant readily admits, includes the same three principal elements as the patented device. The defendant's corner brackets are virtually identical to those of the plaintiff's commercial product. The only difference in the T ring and clamping members of the two is that the vertical leg of the defendant's T ring has, instead of a hook formation, a series of rectangular slots arranged lengthwise at different elevations. The separate clamping member, instead of being in the form of a lug with a matching hook formation, consists of a substantially flat bar adapted to be inserted through one of the rectangular slots provided on the leg of the T. This clamping lug has an elevated transverse groove (located approximately midway on the lug) which catches in the slot so that half of the lug rests under the bottom edge of the drainboard and the other half, extending on the opposite side of the vertical leg of the T, is free to receive the vertically extending screw which engages the underside of the sink flange. Each part of the defendant's device performs the same function as the corresponding part of the plaintiff's device, and they all work together to produce the same double-edged clamping action. The striking similarity of the two devices is

most apparent from a comparison of the trade circulars advertising the two devices (Pl.Ex. 17 and 40).

The defendant claims, however, that the hook formation is the essential feature of the plaintiff's device and, in fact, without it no patent would have been issued. The absence of this hook formation from the defendant's device is the basis for the claim of non-infringement of claim 1 of the patent. The defendant contends that in order to distinguish the Drain device from the prior art and thus overcome the Patent Office's initial objections to the application, the plaintiff emphasized and relied on the hook formation and its function as the unique contribution of its invention. The claims in issue in this suit describe this part of the invention more broadly as "lug attaching formations, and lugs provided with attaching formations for latching engagement with [the T frame] said lugs having portions extending beneath the drainboard and the sink flange, one of said lug portions having adjustable means adapted to clamp said frame in position relative to the drainboard and the sink." In support of its position the defendant relies on Falkenberg v. Golding, 7 Cir., 1952, 195 F.2d 482, and the court's statement at page 485:

> "An applicant may not, before the Patent Office, limit the use of the words in his claims narrowly to avoid the prior art and thus obtain allowance and then subsequently urge a broader construction and attribute to his words a meaning which he previously disclaimed in an effort to establish the claim."

The file history does not substantiate the defendant's claim. Subsequent to the initial application the plaintiff submitted an additional claim (identified as No. 13) which was specifically stated in terms of a T frame encircling the sink bowl and having a hook formation. No amendment was made to the existing claims (including those in suit), however; and the court finds no emphasis in other parts of the file history on the hook formation. The claims were accepted by the Patent Office in the form submitted, and this included the description of adjustable clamping means quoted above. In its file history this case is more closely akin to O'Brien v. O'Brien, 7 Cir., 1953, 202 F.2d 254.

■ Considering the defendant's device in terms of the claims in issue, the court has no doubt that the defendant has infringed. Every part of the defendant's T ring and clamping members may be read in the claims, and each part functions in the manner described in the patent.

> "The test of infringement is whether the accused device does the same work in substantially the same way and accomplishes the same result." Skoog v. McCray Refrigerator Co., 7 Cir., 1954, 211 F.2d 254, 256.

The defendant's device meets this test.

■ With respect to the corner brackets, the court has concluded that the plaintiff has also established infringement. It is conceded that the accused device must be judged in terms of the claims of the patent, not in terms of the commercial embodiment. Peters & Russell, Inc., v. Dorfman, 7 Cir., 1951, 188 F.2d 711. Claim 2, which is typical of the claims relating to the bracket, describes this element as "brackets adapted to be attached to said drainboard and having laterally extending adjustable means adapted to temporarily support the sink in the drainboard opening." The bracket of the accused device (as well as the plaintiff's commercial device) is attached to the drainboard and it does have a laterally extending adjustable means which temporarily supports the sink while the other parts are being secured in place. The adjustable means in the accused device is a vertical metal post rather than a screw, as the drawing of the patent shows. But the latter was illustrative only. As the plaintiff's expert witness (Mr. Fishleigh) demonstrated, the vertical post performs the same function and is capable of whatever

adjustment is necessary as a practical matter.

On the question of validity of the claims, the defendant, as the court understands the statement of its position, does not press the contention that the patented structure taken as a whole was anticipated by the prior art although some testimony to this effect was offered at the trial. The court agrees that neither the Wellington patent 199,765 as to claims 2, 3, 5 and 6, nor the Hyde 260,-871, Coulter 1,727,159, or Madsen 2,158,-467 and 2,280,094 as to claim 1 anticipate the combination of elements found in the patented device.

The defendant now urges invalidity on the ground that the claims merely aggregate known elements, each of which performs its old function independently and with no new results. The combination is thus said to be lacking in invention as that standard was defined in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. The unpatentable aggregation is said to consist of the T-shaped sealing ring of Drain 2,198,696 (an earlier patent by the inventor of the patent in suit) and Thumm 2,228,186, the lever type clamping lug of Hyde 260,871 and the supporting bracket of Wellington 199,765. These and a few additional patents mentioned below are the principal ones upon which the defendant relies.

The T-shaped frame as such is not new. Both the Drain and Thumm patents show a T-shaped metal ring overlapping the drainboard and sink flange. Even these T rings, however, differ in several important respects from that of the present patent. They are not loose members which freely overlap the drainboard. Rather, in these patents the arm of the T intended for the drainboard fits into a groove that must be rabbeted from the surface of the drainboard. The arm of the T is then fitted into this groove, and the T frame secured to the drainboard by means of screws. It was in part to eliminate the rabbetting step, which requires time and precision, that the patent in suit was designed.

Again, the use of a lever to provide clamping force is not in itself new. In the Hyde patent, for example, the "basin clamp" consists of a lever which presses at one end against the flange of the basin and which has at the midway point an attaching bolt secured in the drainboard (a marble slab) and at the other end a set-screw which engages the underside of the slab and originates the clamping forces. There is no T ring in this device, and the function of the lever-clamp is simply to push the bowl directly onto the drainboard. The Coulter patent 1,727,159, while more complex than Hyde, also has a lever element in which the forces are produced by turning a screw. Again, however, there is no sealing frame, and the only clamping action is that of the sink flange against the drainboard.

Both Barr 1,588,000 (for mounting a sliding strip on auto truck bodies) and Fawcett 2,123,410 (for constructing air ducts) utilize a T-shaped formation. In Barr the lever action is almost non-existent and certainly very limited in operation. While the nails in Fawcett produce vertical forces from the wedging action, the model of this device submitted in evidence by the plaintiff does not show or even suggest to the court the type of clamping lever action utilized in the patent in suit. Figure 2 of the Madsen patents 2,158,467 and 2,280,094 most nearly approximates the clamping members of the patented device. It consists of a splice bar of T shape countersunk in a linoleum covering of two separated table top sections. A clamping screw is threaded into the stem of the T, which is located between the two sections of table. The clamping screw engages a splice plate having upturned edges with the lower surface of the table top sections. The resulting clamping action is somewhat similar to that achieved by the plaintiff's T frame and attaching clamping lugs. Figure 2 of the Madsen patent, however, relates to table top con-

struction and has nothing to do with Madsen's sink mounting means which is illustrated in Figures 3 and 4 of patent 2,158,467. The sink mounting of Madsen does not utilize a comparable structure.

While the use of a T-shaped frame and of a clamp lever, each by itself, is not new, the court believes that the additions which the plaintiff has made to each of these parts to produce the interrelated structure in suit constitutes invention. No one prior to this patent had adapted these elements in such a manner as to produce a tightly sealed, efficient sink mounting structure suitable for on-the-job installation. As the plaintiff has well summarized, it was new to provide a separate T-shaped sealing frame in which the vertical leg of the frame was made with lug attaching formations; to provide separable and pivotal clamping lugs to engage with the formation on the leg of the frame in such a manner as to utilize the frame itself as the fulcrum in applying the sealing pressures; and to create such a coordination between the parts that when the clamping screw is tightened, the lugs at the same time draw the frame down into a sealed position, push the sink flange up into a sealed position with the frame and also push the drainboard up into a sealed position with the frame. It is not accurate to say, as the defendant urges, that each element performs its old and known function. Rather, this is a case where "the whole * * * exceeds the sum of its parts". Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162.

The supporting bracket, which is the additional element of claims 2, 3, 5 and 6, is less clearly a patentable element. If it were judged alone and without the adjusting mechanism, it would probably be too obvious a device to constitute invention. In considering the patented structure as a whole, however, the corner bracket serves a highly important function in holding the sink in place while the other parts are applied and in permitting the adjustment of the sink so that the frame may be fitted to it. Nothing comparable to plaintiff's bracket with adjusting means projecting into the sink opening is revealed in the prior art. The only support bracket to which the defendant points is said to be found in the Wellington patent 199,765. But as the court reads the specifications of this patent, the "holders k" are not a supporting bracket at all in the sense of the patent in suit, but rather an essential part of the mechanism that clamps the sink basin to the underside of the drainboard. The plaintiff's support brackets appear to be unique and, when taken with their adjusting element, are a valid part of this patent.

The commercial success of the plaintiff's sink mounting structure has been impressive. When introduced it met with immediate and widespread acceptance and has virtually supplanted the old methods of installing sinks on the job. Several large competitors of Walter E. Selck and Company, including the Briggs Manufacturing Company, requested and obtained licenses to manufacture the device and have paid substantial royalties. Almost six million units have been sold. Commercial success without invention does not make patentability. But the kind of success enjoyed by plaintiff's device may be considered along with the evidence of invention.

The court concludes that it has jurisdiction of the subject matter of this action and of the parties; that the plaintiff is the owner of the patent in suit and of all rights thereunder, including the right to recover for past infringement; that the invention of the patent in suit is a valuable contribution to the sink mounting art and constitutes patentable subject matter; and that claims 1, 2, 3, 5 and 6 of Drain patent 2,440,-741 have been infringed by the defendant. The plaintiff is entitled to injunctive relief and recovery for past infringement.

Counsel for the plaintiff will prepare and submit a decree in keeping with the views herein expressed on or before November 14, 1955.