The **WYOTT MANUFACTURING COMPANY, Inc., Plaintiff,**

v.

The **DORAN COFFEE ROASTING COMPANY, Inc., Defendant.**

**Civ. A. No. 5232.**

United States District Court
D. Colorado.

March 31, 1958.

A. L. Vogl, Frank C. Lowe, William F. Reynard, Denver, Colo., for plaintiff.

Gorsuch, Kirgis, Campbell, Walker & Grover, John L. Ferguson, Denver, Colo., Fay & Fay, Horace B. Fay, Jr., Cleveland, Ohio, for defendant.

ARRAJ, District Judge.

Plaintiff, the Wyott Manufacturing Company, instituted this action against defendant, The Doran Coffee Roasting Company, for infringement of Letters Patent No. 2,649,276, entitled "Liquid Dispensing Device," issued to Thomas L. Titus on August 18, 1953, and assigned to the plaintiff. The device in issue is used primarily as a coffee urn faucet in restaurants and cafes. When plaintiff's device was first put on the market, its manufacture and sale constituted a relatively small proportion of the plaintiff's business; but at the present time the manufacture and sale of the device constitutes approximately 30% of plaintiff's business, and the device appears to have been well accepted in the food dispensing industry. Another company, the Tomlinson Company, has been manufacturing a similar device for some time and has been selling it to users in the industry. The defendant acquired some of the Tomlinson dispensers and loaned them to restaurant operators who purchased defendant's coffee. A Tomlinson dispenser faucet was found in the use of a cafe in Cheyenne, Wyoming, and it is this device which plaintiff claims is infringing the terms of its patent. It is admitted that defendant loaned this faucet to the cafe operator.

Plaintiff claims that defendant has been and is infringing its patent by using a liquid dispensing device embodying the patented device, within the terms of claims 7, 8, and 9 of the patent. Of the nine claims in the patent as issued, only the last three are here claimed to be infringed. Plaintiff asks for an injunction against further infringement and for an accounting and damages. Defendant denies infringement, based primarily on the doctrine of estoppel by limitation, and asserts affirmative defenses of invalidity for lack of invention, for lack of novelty, for lack of originality, because patentee was not the original inventor, by anticipation, by reason of the state of the art, by reason of prior knowledge, and for indistinctiveness. Certain other affirmative defenses were withdrawn at the time of trial and the matter of an accounting of damages was deferred pending determination of the issues of invalidity and infringement.

The questions to be determined by the Court are:

1. Is the Titus patent valid? and

2. Does the Tomlinson faucet infringe the Titus patent?

Considering first, the validity of the Titus patent, defendant relied on the same group of prior patents as evidence of invalidity under all of the affirmative defenses except that of invalidity for indistinctiveness, and consequently these defenses will be considered together. Essentially, the issue is simply whether the combination disclosed by the Titus patent is to be found in the prior art.

■ Section 282, Title 35 U.S.C.A., bolstered by many decisions of our Courts imposes a heavy burden on a defendant who seeks to attack the validity of a patent. That Section provides, in part:

"A patent shall be presumed valid. The burden of establishing the invalidity of a patent shall rest on the party asserting it."

See also Radio Corporation of America v. Radio Engineering Laboratories, Inc.,

1934, 293 U.S. 1, 54 S.Ct. 752, 78 L.Ed. 1453. In Oliver United Filters, Inc., v. Silver, 10 Cir., 1953, 206 F.2d 658, at page 664 the Court said,

" * * * This is especially true in view of the presumption that a duly issued patent is valid. This presumption is overcome only by clear and convincing evidence. Referring to the evidence necessary to overcome this presumption we said in Insul-Wool Insulation Corp. v. Home Insulation, Inc., 10 Cir., 176 F.2d 502, 505, that ' * * * throughout all the cases runs the concept that the proof must be more than a dubious preponderance—it must be strong, clear and convincing.' " Citing Radio Corporation of America v. Radio Engineering Laboratories, supra, and other cases.

The defendant did not sustain the burden of proof of invalidity of the Titus patent.

This patent, which exists in a crowded art, teaches the use of a T-shaped diaphragm, the leg of which is resilient with a concave undersurface to provide a sharply defined peripheral edge. The leg extends into the valve chamber and seats upon the chamber floor and over and around the outlet in the floor, without touching the outlet. The other elements of the device are auxiliary and not important to this case.

██ Although the physical elements of the patent, taken separately, are old in the art, this patent is claimed on the combination of those elements and the resulting effect. It is a true combination and not merely an aggregation because the result is due to the cooperation of the material elements and is a product of the combination and not a collection of several results. The rule where a patent is claimed on a combination is that the patent is valid, even though all of its elements are disclosed in the prior art, if a new and useful functional relationship or result is established or if an old result is attained in a more facile, economical, and efficient way. Lyman Gun

Sight Corp. v. Redfield Gun Sight Corp., 10 Cir., 1936, 87 F.2d 26; Oliver United Filters, Inc., v. Silver, supra; Skinner Bros. Belting Co. v. Oil Well Improvements Co., 10 Cir., 1931, 54 F.2d 896; Baum v. Jones & Laughlin Supply Co., 10 Cir., 1956, 233 F.2d 865. Here the cooperation of the various elements and the total effect thereof, and not the elements taken individually, is in issue, and evidence of the individual elements in the prior art is applicable only as it tends to show the existence of some portion of the total effect of the cooperation of these elements here.

█ The new functional relationship of the combination claimed by plaintiff was stated by plaintiff's expert witness as,

" * * * an organization which is characterized by a valve sealing element co-operable with the floor element by a line as distinguished from an area. * * * "

"Operationally it is distinguished * * * by the fact that in effecting a closing of the valve there is first the line contact * * * followed by a spreading of the contacting area with a squeezing or squeegee or scrubbing effect to crowd out, and laterally of the valve seal, any foreign matter to a degree that might interfere with complete closing of the valve."

The prior art disclosed that previous similar devices utilized either a raised ring or rim around the outlet, a convex leg bottom which filled the outlet, or a rigid leg, any one of which would effectually prevent the above stated relationship. The result obtained by this new arrangement was an improved sealing action and a no-drip faucet.

██ Defendant relied primarily on the Marchant patent, No. 2,089,977, as evidence of the asserted combination in the prior art; and defendant's expert witness claimed that the Marchant patent was a complete anticipation of the Titus patent, because the diaphragm in one drawing could be substituted in another

drawing. The Marchant patent was not cited by the examiner, and that fact lends support to defendant's contention, but the final test is still the facts of the Marchant patent itself. It is my opinion that the combination claimed here is not anticipated by any combination of Marchant for the reason that the leg bottom in Marchant was covered by a film of rubber only, as stated in the claims, and consequently could not be resilient. Lacking this element, it would be impossible, under the claims of that patent, to produce the initial line contact followed by a surface-to-surface squeegee action which produces the novel effect of the Titus patent that is relied on here. Although this element in itself may be minor, it does establish the totally different effects achieved by the two patents and thus becomes of major importance. As stated in Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 435, 31 S.Ct. 444, 447, 55 L.Ed. 527,

"Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention."

A completely resilient leg bottom was not claimed in Marchant, and was clearly a material element of the Titus combination because the effect claimed could not be produced without it. Where an otherwise valid combination patent from which arises a new functional relationship is attacked as being disclosed by the prior art, all essential elements of the combination necessary to produce the total effect must be shown to exist in a single prior device to sustain the defense of invalidity; the lack of a vital element in the prior patent relied on as being a complete anticipation of the patent in issue causes the defense to fail. Chicago Lock Co. v. Tratsch, 7 Cir., 1934, 72 F.2d 482; 1 Walker on Patents, Deller's Ed.

Sec. 47. For that reason, it is held that the Titus patent is not invalid on these grounds.

■■ There was competent evidence that the patentee here had tried for many years to invent a sanitary no-drip faucet that would be materially superior to the faucets then in use. The fact that the device he finally patented achieved commercial success, while not conclusive of invention where there is other evidence to show it, is nevertheless an additional indication that the device was, in fact, invention. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 1944, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Church of Religious Science v. Kinkead Industries, Inc., 7 Cir., 1956, 234 F.2d 573; Oliver United Filters, Inc., v. Silver, supra; Harris v. National Machine Works, 10 Cir., 1948, 171 F.2d 85. The additional fact that it was imitated by another also goes to establish invention, and to negative the assertion that it was fully disclosed by the prior art. Filtex Corp. v. Amen Atiyeh, 9 Cir., 1954, 216 F.2d 443; Kurtz v. Belle Hat Lining Co., 2 Cir., 1922, 280 F. 277.

■ The final affirmative defense is that the Titus patent was invalid for indistinctiveness. Here it is asserted that the claims disclose a patent ambiguity by describing the leg bottom variously as "concave" and "convex from the under side." However, the leg bottom was illustrated in a similar manner in each of the illustrations, and these drawings may be referred to in order to construe any ambiguity in the claims. Permo, Inc., v. Hudson-Ross, Inc., 7 Cir., 1950, 179 F.2d 386; Chicago Forging & Mfg. Co. v. Bade-Cummins Mfg. Co., 6 Cir., 1933, 63 F.2d 928. See also, Walker on Patents, Deller's Ed. Sec. 262. Taken together, there could be no real doubt as to what was meant by the description, and any mechanic skilled in the art could have constructed the device from the description in the claims and specification. Where this is so, the patent will not fail for ambiguity, although more accurate language could perhaps have

been used. 35 U.S.C.A. § 112. The Titus Patent is valid.

Turning then to the issue of infringement, plaintiff has asserted the doctrine of equivalents, claiming that the elements which differ structurally in defendant's device are the functional and mechanical equivalents of the same elements in plaintiff's device, and therefore within the claims of the patent. Defendant asserts the doctrine of "estoppel by limitation," claiming that the file wrapper history of the patent shows that plaintiff, in order to obtain allowance of the patent, limited his claims by eliminating broader descriptions of the various elements which would include defendant's structural differences, and therefore cannot now claim those differences as being within the claims of his patent.

The doctrine of equivalents is frequently invoked when the accused device is not within the strict terms of the claim, and there is a clear lack of identity between the two devices. It is generally stated that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Union Paper-Bag Machine Co. v. Murphy, 1877, 97 U.S. 120, 125, 24 L.Ed. 935; see also, Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097; Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 1932, 62 F.2d 442; Johns-Manville Corp. v. National Tank Seal Co., 10 Cir., 1931, 49 F.2d 142. And in determining equivalents, consideration must be given to the purpose of the element, its qualities when combined with the other elements, and the function it is intended to perform. Graver Tank & Mfg. Co. v. Linde Co., supra, 339 U.S. at page 609, 70 S.Ct. at page 856.

The doctrine of "estoppel by limitation," or "file wrapper estoppel" as it is sometimes referred to, is that when the applicant has been compelled by the rejection of his application to restrict or limit his claim by amendment he is thereafter estopped to claim the benefit of the rejected claim or such a construction of his amended claim as would be equivalent thereto. Smith v. Magic City Kennel Club, 1931, 282 U.S. 784, 790, 51 S.Ct. 291, 75 L.Ed. 707; see also, U. S. Air Conditioning Corp. v. Governair Corp., 10 Cir., 1954, 216 F.2d 430, 432.

However, it is well settled that the doctrine of equivalents cannot be used to expand claims to cover elements or equivalents of an element that have been specifically eliminated from the claim, and which the patentee is precluded from claiming by the doctrine of estoppel by limitation. Schriber-Schroth Co. v. Cleveland Trust Co., 1940, 311 U.S. 211, 221, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132; Smith v. Magic City Kennel Club, supra, 282 U.S. at page 790, 51 S.Ct. at page 293; Jones v. Bodaness, 10 Cir., 1951, 189 F.2d 838, 841; Ruth v. Climax Molybdenum Co., 10 Cir., 1937, 93 F.2d 699.

The main points of contention here were the valve floor and the bottom of the diaphragm leg. The latter was described in Claim 7 of the Titus patent as "being formed of vertical cross-sectional concave shape," in Claim 8 as "being formed convex from the under side in longitudinal cross-section," and in Claim 9 as "being vertically cross-sectionally concave." In the specification it was described as "vertically cross-sectionally formed convexed in contour in upward direction, or concave in downward direction, as illustrated at (figure) 43." As pointed out above, the illustration referred to makes clear what was meant, and leaves no room for interpretation. Thus, a diaphragm leg that is substantially concave on the bottom would infringe the terms of the patent if used for the same purpose and in the same way as in the Titus patent. The bottom of the diaphragm leg on defendant's device was substantially concave, but with a slightly convex boss in the center. It appears that this convex boss served no function, at least in connection with the novel result of the Titus patent. At most it served as additional support or

reinforcement for the leg, and had no relation to the seating arrangement or initial line contact followed by a squeegee action. On the other hand, the concave surface was clearly material because it provided the sharply defined peripheral edge of the undersurface of the diaphragm leg that was required for the initial line contact. Apart from this convex boss, there was no difference between the leg bottoms on the two devices, and the concave surface on defendant's device was therefore within the literal terms of the Titus claims. The doctrine of equivalents and the doctrine of estoppel by limitation need not be considered in this connection.

The valve floor was described in Claim 7 of the patent as "an adjacent shoulder downwardly and inwardly slanting as a cone to the outlet," in Claim 8 as "a funnel-like floor with a central outlet," and in Claim 9 as "a downwardly slanting funnel-like floor." In the specification there is no elaboration concerning the floor. The floor of defendant's device is essentially flat, and it is asserted that a flat floor in such a device is the structural and mechanical equivalent of the floor described in the claims. However, the file wrapper history of these claims discloses that Claim 7 was originally filed as Claim 8 and contained no description of the floor; it was amended as Claim 35 and referred to the floor merely as "an adjacent shoulder." Clearly, these descriptions would have embraced a flat floor. However, on rejection Claim 35 was amended to read as it was finally issued as Claim 7. Although it is plaintiff's claim that the floor description was thus amended to avoid the raised ring or rim around the outlet on the three patents which the examiner cited on rejection, it is noted that the slanting floor feature was emphasized by the attorney at the time of the amendment and the prior cited art distinguished by saying that they did not have a slanted floor. On this showing, it is the Court's opinion that plaintiff is bound by the description as to that claim and cannot assert that other floors are the equivalent of

the above description when wording that would include them was specifically eliminated by amendment.

Claim 9 included the present floor description when first submitted, but in view of the similarity to the wording of Claim 7 and the history of Claim 7, it is the opinion of the Court that the doctrine of estoppel by limitation is applicable here for the same reason. Certainly it cannot be doubted that previous rejections and amendments of other claims will have a considerable effect on the wording used in a claim submitted at a later date. Therefore, it is held that plaintiff is estopped by the limitations and amendments shown in the file wrapper from now asserting that the flat floor of defendant's device is the equivalent of the floor described in Claims 7 and 9.

█ On the other hand, Claim 8 is considerably broader than the other two claims sued upon, in that it is limited only by the adjective "funnel-like." As demonstrated by plaintiff by the use of a regulating cover for a cream separator, which had a flat floor, and as testified to by plaintiff's expert witness, a sloping floor is not a necessary ingredient of a funnel. All faucet floors are essentially funnels, and it is the opinion of the Court that the floor of defendant's device was within the plain terms of Claim 8. The limitations (sloping floor) on Claims 7 and 9 need not be considered here for the reason that limitations imposed on one claim, as a general rule, will not be attributed to other claims for the purpose of avoiding infringement. Landis Machine Co. v. Parker-Kalon Corp., 2 Cir., 1951, 190 F.2d 543; Electric Machinery Mfg. Co. v. General Electric Co., 2 Cir., 1937, 88 F.2d 11. As with the bottom of the diaphragm leg, the doctrines of estoppel by limitation and equivalents have no application, when the particular element is within the terms of the description used in the claim.

█ Therefore, the material elements of defendant's device fall within the description of Claim 8 of the Titus patent, and Claim 8 is thereby infringed.

However, the floor of defendant's device is sufficiently different, that it cannot be said that Claims 7 and 9 are infringed.

The Court, therefore, concludes:

1. That the Titus liquid dispensing device in suit is a patentable device, its patent is valid, and defendant has failed to sustain the burden of persuasion imposed upon it, and

2. It has been infringed by defendant and plaintiff is entitled to judgment to enjoin the continued infringement. At an appropriate time, evidence will be taken on the question of damages suffered by plaintiff. Judgment will be entered accordingly.

The foregoing shall constitute my Findings of Fact and Conclusions of Law in conformance with Rule 52 of Federal Rules of Civil Procedure, 28 U.S.C.A.

Counsel for plaintiffs will prepare a judgment and decree in accordance with this opinion.